UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF IGLOO SERIES V TRUST<br>          Plaintiff,<br>v.<br><br>UNKNOWN HEIRS, BENEFICIARIES, DEVISEES, AND ALL OTHER PARTIES CLAIMING AN INTEREST BY, THROUGH, OR UNDER THE ESTATE OF MAXIMIN C. COTE, et al.<br>          Defendant(s) | Civil Action No. 1:23-cv-00253-JJM-LDA |

**<u>AMENDED COMPLAINT</u>**

<u>Jurisdiction and Venue</u>

1.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) since there is complete diversity between Plaintiff and all Defendants and the amount in controversy exceeds $75,000.00.

2.      Venue is proper under 28 U.S.C. § 1391(b)(2) since the real property that is subject to this complaint is located in the State of Rhode Island.

3.      Plaintiff seeks to foreclose a mortgage to Plaintiff pursuant to R.I.G.L. § 34-27-1, et seq.

## Parties

4.      Plaintiff U.S. Bank Trust National Association, as Trustee of Igloo Series V Trust has a usual place of business at 7114 E Stetson Drive, Scottsdale, AZ 85251 (the "**Plaintiff**").

5.      Defendants, UNKNOWN HEIRS, BENEFICIARIES, DEVISEES, AND ALL OTHER PARTIES CLAIMING AN INTEREST BY, THROUGH, OR UNDER THE ESTATE OF MAXIMIN C. COTE ("Heirs"), may have an interest herein as the heirs to the title of the property subject to this action.

6.      Defendant, TRISHA LEE COTE, may claim an interest herein as an heir to the Estate if Maximin C. Cote, and upon information and belief, is a Citizen of the United States of America, domiciled at 3228 N. Main Street, Fall River, MA 02721.

7.      Defendant, ROXANNE RENEE COTE, may claim an interest herein as an heir to the Estate if Maximin C. Cote, and upon information and belief, is a Citizen of the United States of America, domiciled at 315 Clement Street, Apt. 3, Tiverton, RI 02878.

8.      Defendant, JAMES GERARD COTE, may claim an interest herein as an heir to the Estate if Maximin C. Cote, and upon information and belief, is a Citizen of the United States of America, domiciled at 132 Campion Avenue, Tiverton, RI 02878.

9.      Defendant, JENNIFER GERARD COTE, may claim an interest herein as an heir to the Estate if Maximin C. Cote, and upon information and belief, is a Citizen of the United States of America, domiciled at 301 Bulgarmarsh Rd, Tiverton RI 02878.

10.     Defendant, Wells Fargo Bank successor by merger to Wells Fargo Bank Minnesota, N.A., as indenture Trustee for MSCC Heloc Trust 2007-1 is a national

banking association with a principal place of business located at 9062 Old Annapolis Road, Columbia, MD 21045.

11.  Defendants, Trisha Lee Cote, Roxanne Renee Cote, James Gerard Cote and Jennifer Lynn Ferreira are collectively referred to as to as the "Identified Heir" Defendants.

12.  Defendant, State of Rhode Island Division of Taxation, has a principal place of business at One Capitol Hill, Providence, RI 02908.

## Facts

13.  Maximin C. Cote and Cheryl A. Cote executed and delivered a Quitclaim deed for the Property to Maximin C. Cote as sole tenant, which deed was recorded on February 4, 2003, in Land Evidence Records for the Town of Tiverton at Book 770 at Page 253.  *See* **Exhibit A**.

14.  There is an unbroken chain of title of not less than 40 years, which creates marketable record title in Defendant pursuant to R.I.G.L. § 34-13.1-2.  See **Exhibit B**.

15.  Maximin C. Cote (deceased) executed and delivered a note dated February 7, 2004, to Ameriquest Mortgage Company in the original principal amount of $175,000.00 (the "**Note**").  See **Exhibit C**.

16.  The note was endorsed in blank.

17.  Maximin C. Cote became deceased on July 19, 2022.  A true and accurate copy of the Death Certificate is attached hereto as **Exhibit D.**

18.  The Plaintiff is the current holder of the Note.

19.    SN Servicing Corporation is the servicer of the loan.

20.    As security for the Note, Maximin C. Cote executed, granted, and delivered a mortgage in the amount of $175,000.00 to Ameriquest Mortgage Company dated February 7, 2004, and recorded in the Land Evidence Records for the Town of Tiverton at Book 887 at Page 279 (the "**Mortgage**").  See **Exhibit E**.

21.    The Mortgage was assigned from Ameriquest Mortgage Company to Mortgage Electronic Registration Systems, Inc, dated February 17, 2004 and recorded May 24, 2005 in Book 992 at Page 129.

22.    The Mortgage was then assigned by Mortgage Electronic Registration Systems, Inc to Nationstar Mortgage, LLC, dated November 19, 2012 and recorded December 12, 2012 in Book 1429 at Page 282.

23.    The Mortgage was then assigned by Nationstar Mortgage, LLC to Federal National Mortgage Association, dated January 23, 2015 and recorded February 3, 2015 in Book 1525 at Page 249.

24.    The Mortgage was then assigned by Federal National Mortgage Association to U.S. Bank Trust National Association, not in its individual capacity but solely as Trustee of Citigroup Mortgage Loan Trust 2019-C, on October 25, 2019 and recorded on November 4, 2019 in Book 1747 at Page 318

25.    The Mortgage was then finally assigned by U.S. Bank Trust National Association, not in its individual capacity but solely as Trustee of Citigroup Mortgage Loan Trust 2019-C to U.S. Bank Trust National Association, as Trustee of Igloo Series V Trust, the Plaintiff in the instant matter.

26.     Copies of the assignments of mortgage are attached hereto as **Exhibit F**.

27.     The State of Rhode Island Division of Taxation is named as Defendant if and to the extent the entity claims a lien arising by operation of law or otherwise by virtue of the deaths of Linda F. Hyman and/or Robert I. Hyman.  This action does not seek to disturb the priority of any such lien(s) as established by applicable law.

28.     The Mortgage is secured by the Property located in the Town of Tiverton, more particularly described as follows:

> That certain lot or parcel of land, with all buildings and improvements thereon, situated in the Town of Tiverton, County of Newport, State of Rhode Island, on the easterly side of Campion Avenue, and bounded and described as follows:
>
> WESTERLY on Campion Avenue Extension, ninety (90) feet;
>
> NORTHERLY by Lot No. 26 on plan of land hereinafter mentioned, one hundred ten (110) feet, more or less;
>
> EASTERLY by land now or formerly of Robert J. Lizotte, et ux, ninety (90) feet more or less, and
>
> SOUTHERLY by Lot No. 30 on said plat, one hundred ten (110) feet, more or less;
>
> Containing 9,900 square feet of land, more of less.
>
> However otherwise bounded and described being LOT NO. 28 on that plat entitled "Plan of Land, Sectional, Location - Tiverton, R.I., Campion Ave. Extension, Owner, Lizotte, Robt. L. surveyed and drawn by W. Van Cain, 3-29-60", on file in Plat Book 10 at page 53 of the Tiverton Town Clerk's Office.
>
> Property Address:
>
> 132 CAMPION AVENUE
> TIVERTON, RHODE ISLAND 02878
> AP _173_  Lot _28_

29.     The Plaintiff is the present holder of the Note and Mortgage.

30.     No person other than the parties hereto appears of record in Land Evidence Records for the Town of Tiverton to have any interest in the Property.

## **COUNT I**

31.     Plaintiff realleges and reaffirms the allegations set forth in paragraphs 1-30 as if restated herein.

32.     Maximin C. Cote is in default in the performance of the terms and conditions of the Note by reason of failure to timely tender principal and interest payments as required by the terms of the Note.

33.     As of January 20, 2022, the sum of $4,033.11 was necessary to cure the default.

34.     As a result of the default, Plaintiff is entitled to foreclose the sums due and owing in connection with the Note.

35.     As of September 30, 2022, the sum of $164,902.14 was due and owing to Plaintiff from Defendant in connection with the Note.

36.     Defendant has no defenses or right of set off with respect to the amounts due in connection with the Note, with the exception of any deficiency balance due and owning in connection with the Note which may have been discharged in bankruptcy.

37.     On or about December 16, 2021, Plaintiff, via its authorized servicer of the Mortgage, sent a notice of default and demand in accordance with the notice and default provisions of the Mortgage.

38.     On or about September 30, 2022, Plaintiff or its predecessor in interest, or authorized servicer of the Mortgage, or anyone holding under the Mortgage, by its

attorneys, sent a notice of acceleration of the debt pursuant to the notice and default provisions of the Mortgage.

## COUNT II

39.    Plaintiff realleges and reaffirms the allegations set forth in paragraphs 1-38 as if restated herein.

40.    The Defendant Heirs and identified Heirs, are the present owners of the Property, are the owners of the equity of redemption of the Property.

41.    Maximin C. Cote is in default in the performance of the terms and conditions of the Mortgage, namely, default in the payment of principal and interest of the Note secured by the Mortgage.

42.    Plaintiff is entitled to foreclose the Mortgage, in full or partial satisfaction of the Defendants' obligations in connection with the Note and Mortgage pursuant to their terms and applicable law.

43.    Plaintiff is entitled to foreclose the Mortgage by entry and possession and by exercise of the power of sale contained therein, in accordance with R.I.G.L. § 34-27-1, et seq.

44.    Upon information and belief and upon examination of the public records, there are no other parties with an equitable interest in the Property.

45.    Upon information and belief and upon examination of the public records, there are no other parties with a mortgage, lien, or encumbrance with respect to the Property.

46.     Upon information and belief, there are no persons having any interest of ownership who are in the Military Service of the United States of America or otherwise entitled to the relief and benefits provided by the Act of Congress known as the Soldiers' and Sailors' Civil Relief Act of 1940, as amended.  See **Exhibit G.**

WHEREFORE, Plaintiff prays that the following relief enter:

1.  That an order of notice issue on this Complaint, if the Court deems appropriate;

2.  Declare that the Mortgage recorded in the Land Evidence Records for the Town of Tiverton, Rhode Island is a valid lien on the Property;

3.  Declare that Maximin C. Cote (deceased), is in default of the terms and conditions of the Note and Mortgage;

4.  Enter an interlocutory decree authorizing the Plaintiff to foreclose the Mortgage recorded in the Land Evidence Records for the Town of Tiverton on February 17, 2004, in book 887 at page 279;

5.  Enter judgment in favor of Plaintiff for the sums due and owing from Defendants in connection with the Note and Mortgage with the exception of any deficiency balance due and owning in connection with the Note which may have been discharged in bankruptcy;

6.  Enter an Order authorizing Plaintiff to satisfy its Judgment from the foreclosure pursuant to the terms of the Mortgage;

7. The Court approve the acts of the Plaintiff done and performed under the authority of any interlocutory decree authorizing a foreclosure sale and enter a final decree confirming the foreclosure sale; and

8. Such other and further relief as this Honorable Court deems meet and just.

Respectfully submitted,
U.S. Bank Trust National Association, as
Trustee of Igloo Series V Trust,
By its attorney,

_____
David A. Shaw, Esq. 03497
Demerle Hoeger LLP
10 City Square
Boston, MA 02129
(617) 337-4444
(617) 337-4496 (fax)
DShaw@dhnewengland.com

EXHIBIT A

## QUITCLAIM DEED

000253

000662

We, MAXIMIN C. COTE AND CHERYL A. COTE, both of the Town of Tiverton, County of Newport, State of Rhode Island, for consideration paid, grants to MAXIMIN C. COTE;

### with QUIT-CLAIM COVENANTS:

That certain lot or parcel of land, with all buildings and improvements thereon, situated in the Town of Tiverton, Rhode Island, on the easterly side of Campion Avenue, and bounded and described as follows:

WESTERLY — on Campion Avenue Extension, ninety (90) feet;

NORTHERLY — by Lot No. 26 on plan of land hereinafter mentioned, one hundred ten (110) feet, more or less;

EASTERLY — by land now or formerly of Robert J. Lizotte, at ux, ninety (90) feet more or less, and

SOUTHERLY — by Lot No. 30 on said plat, one hundred ten (110) feet, more or less;

Containing 9,900 square feet of land, more or less.

However otherwise bounded and described being LOT NO. 28 on that plat entitled "Plan of Land, Sectional, Location--Tiverton, R.I., Campion Ave. Extension, Owner, Lizotte, Robt. J., surveyed and drawn by W. Van Cula, 3-29-60," on file in Plat Book 10 at page 53 of the Tiverton Town Clerk's Office.

The consideration is such that no documentary stamps are required.
The provisions of RIGL 23-28.35-1 do not apply to this transaction as it is not a sale.

We, Maximin C. Cote and Cheryl A. Cote, do hereby covenant that, as to our interest in this property, no RIGL 44-30-71.3 withholding is required as this transaction is not a sale.

WITNESS our hands this 31st day of January, 2003.

RECEIVED
FILED AT TIVERTON
03 FEB -4  AM 8:40

Maximin C. Cote

Cheryl A. Cote

AND RECORDED ATTEST
HANNIBAL F. COSTA, TOWN CLERK

STATE OF RHODE ISLAND
COUNTY OF KENT

In Warwick, on the 31st day of January, 2003, before me personally appeared Maximin C. Cote and Cheryl A. Cote to me known and known by me to be the parties executing the foregoing instrument, and they acknowledged said instrument, by them executed, to be their free act and deed.

Notary Public

Grantees Address:
132 Campion Avenue
Tiverton, RI 02878

OFFICIAL SEAL
JON A. KELLY
NOTARY PUBLIC - RHODE ISLAND
My Comm. Expires June 19, 2005

# EXHIBIT B

224

02953

We, Michael A. Reilly and Helen M. Reilly, husband and wife,

of Tiverton, Newport County, Rhode Island,
for consideration paid, grant to Gerard L. Desrochers and Harriet J. Desrochers,
Husband and Wife, as Tenants by the Entirety,

of 132 Campion Avenue, Tiverton, Rhode Island,          with WARRANTY COVENANTS

That certain lot or parcel of land, with all buildings and improvements thereon,
situated in the Town of Tiverton, Rhode Island, on the easterly side of Campion
Avenue, and bounded and described as follows:

WESTERLY      on Campion Avenue Extension, ninety (90) feet;
NORTHERLY     by Lot No. 26 on plan of land hereinafter mentioned, one hundred
              ten (110) feet, more or less;
EASTERLY      by land now or formerly of Robert J. Lizotte, et ux, ninety (90)
              feet, more or less, and
SOUTHERLY     by Lot No. 30 on said plat, one hundred ten (110) feet, more or less;
              containing 9900 square feet of land, more or less.

HOWEVER OTHERWISE bounded and described being LOT NO. 28 on that plat entitled
"Plan of Land, Sectional, Location - Tiverton, R. I., Campion Ave. Extension,
Owner, Lizotte, Robt. J., surveyed and drawn by W. Van Gala, 3-29-60," on file
in Plat Book 10 at page 83 of the Tiverton Town Clerk's Office.

HOWEVER otherwise bounded and described being the same premises conveyed by
Helen R. Snell, Widow and Surviving Joint Tenant of Edward B. Snell, by deed
dated March 30, 1984 and recorded in the Land Evidence Records of the Town
of Tiverton in Book 189, Page 61.



xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx ,
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
xxxxxxxxxxxxxxxxxxxxxxxx

Witness our hand s this 14th day of October 19 86.

RECEIVED
TOWN OF TIVERTON
                                        Michael A. Reilly
1986 OCT 15 PH 1: 51

AND RECORDED                            Helen M. Reilly
ATTEST TOWN CLERK

State of Rhode Island
County of Newport

     In Tiverton on the 14th day of October 19 86
before me personally appeared Michael A. Reilly and Helen M. Reilly,

Husband and Wife,

to me known and known by me to be the part ies.     executing the foregoing
instrument, and      they      acknowledged said instrument, by      them
executed, to be      their      free act and deed.

                                        James A Donnelly    Notary Public
                                        My commission expires 5/30/91

**DEED**

252                                          02146

GERARD L. DESROCHERS and HARRIET J. DESROCHERS of Tiverton, Newport County, Rhode Island, for consideration paid, and in full consideration of One Hundred Twenty-six Thousand Nine Hundred and 00/100 ($126,900.00) Dollars GRANT to MAXIMIN C. COTE and CHERYL A. COTE, husband and wife, as tenants by the entirety, both of 132 Campion Avenue, Tiverton, Newport County, Rhode Island 02878 WITH QUITCLAIM COVENANTS, the land in Tiverton, Newport County, Rhode Island, with all buildings and improvements thereon, bounded and described in Exhibit "A" attached hereto and incorporated herein by reference.

WITNESS our hands and seals this 17th day of June, 1994.

William G. Kenney, Witness

Gerard L. Desrochers

Harriet J. Desrochers

COMMONWEALTH OF MASSACHUSETTS

Bristol, ss.                                    June 17, 1994

Then personally appeared the above-named Gerard L. Desrochers and Harriet J. Desrochers and acknowledged the foregoing instrument to be their free act and deed, before me

RECEIVED
TIVERTON
94 JUN 17 AM 11:34

001276

William G. Kenney, Notary Public

My Commission Expires:   10/30/98

AND RECORDED ATTEST,
HANNIBAL F. COSTA TOWN CLERK

253

### EXHIBIT "A"
[to Deed of Gerard L. Desrochers
and Harriet J. Desrochers
to Maximin C. Cote and Cheryl A. Cote
dated June 17, 1994]

That certain lot or parcel of land, with all buildings and improvements thereon, situated in the Town of Tiverton, Rhode Island, on the easterly side of Campion Avenue, and bounded and described as follows:

WESTERLY          on Campion Avenue Extension, ninety (90) feet;

NORTHERLY         by Lot No. 26 on plan of land hereinafter mentioned, one hundred ten (110) feet, more or less;

EASTERLY          by land now or formerly of Robert J. Lizotte, et ux, ninety (90) feet, more or less, and

SOUTHERLY         by Lot No. 36 on said plat, one hundred ten (110) feet, more or less;

                  Containing 9,900 square feet of land, more or less.

HOWEVER OTHERWISE bounded and described being LOT NO. 28 on that plat entitled "Plan of Land, Sectional, Location - Tiverton, R. I., Campion Ave. Extension, Owner, Lizotte, Robt. J., surveyed and drawn by W. Van Cala, 3-29-60," on file in Plat Book 10 at page 53 of the Tiverton Town Clerk's Office.

Being the same premises conveyed to these grantors by deed of Michael A. Reilly and Helen M. Reilly dated October 14, 1986 and recorded with the Land Evidence Records for the Town of Tiverton in Book 229, Page 224.

## QUITCLAIM DEED

000253

000662

We, MAXIMIN C. COTE AND CHERYL A. COTE, both of the Town of Tiverton, County of Newport, State of Rhode Island, for consideration paid, grants to MAXIMIN C. COTE;

### with QUIT-CLAIM COVENANTS;

That certain lot or parcel of land, with all buildings and improvements thereon, situated in the Town of Tiverton, Rhode Island, on the easterly side of Campion Avenue, and bounded and described as follows:

| | |
|---|---|
| WESTERLY | on Campion Avenue Extension, ninety (90) feet; |
| NORTHERLY | by Lot No. 26 on plan of land hereinafter mentioned, one hundred ten (110) feet, more or less; |
| EASTERLY | by land now or formerly of Robert J. Lizotte, et ux, ninety (90) feet more or less, and |
| SOUTHERLY | by Lot No. 30 on said plat, one hundred ten (110) feet, more or less; |
| | Containing 9,900 square feet of land, more or less. |

However otherwise bounded and described being LOT NO. 28 on that plat entitled "Plan of Land, Sectional, Location--Tiverton, R.I., Campion Ave. Extension, Owner, Lizotte, Robt. J., surveyed and drawn by W. Van Cala, 3-29-60," on file in Plat Book 10 at page 53 of the Tiverton Town Clerk's Office.

The consideration is such that no documentary stamps are required.
The provisions of RIGL 23-28.35-1 do not apply to this transaction as it is not a sale.

We, Maximin C. Cote and Cheryl A. Cote, do hereby covenant that, as to our Interest in this property, no RIGL 44-30-71.3 withholding is required as this transaction is not a sale.

WITNESS our hands this 31st day of January, 2003.

RECEIVED
TOWN OF TIVERTON
03 FEB -4  AM 8:40

_Maximin C. Cote_
Maximin C. Cote

_Cheryl A. Cote_
Cheryl A. Cote

AND RECORDED ATTEST
HANNIBAL F. COSTA, TOWN CLERK

STATE OF RHODE ISLAND
COUNTY OF KENT

In Warwick, on the 31st day of January, 2003, before me personally appeared Maximin C. Cote and Cheryl A. Cote to me known and known by me to be the parties executing the foregoing instrument, and they acknowledged said instrument, by them executed, to be their free act and deed.

_____
Notary Public

Grantees Address:
132 Campion Avenue
Tiverton, RI 02878

EXHIBIT C

Loan No.

# FIXED RATE NOTE

February 7, 2004          Orange          CA
[Date]                    [City]          [State]

132 Campion Avenue, Tiverton, RI 02878
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 175,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is    Ameriquest Mortgage Company .

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 5.500%.

The interest rate required by this Section 2 is the rate I will pay before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on    April 1, 2004.

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on    March 1, 2034, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at:   505 City Parkway West, Suite 100, Orange, CA 92868

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payments will be in the amount of U.S. $993.64.

## 4. BORROWER'S RIGHT TO PREPAY

I may repay this Note at any time without a penalty.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then; (i) any such loan charged shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed me.

Initials:

M.C.C.

02/07/2004 7:50:45 AM

0000096732006900000380201

3004RI (Rev. 01/01)

Loan No

### (D)  No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to Pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if prohibited by federal law as of the date of this Security Instrument.

If the Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
Borrower: Maxinia C Cole
SSN:    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

_____ (Seal)
Borrower:
SSN:

_____ (Seal)
Borrower:
SSN:

_____ (Seal)
Borrower:
SSN:



KA370 (Rev. 6/03)



## *Allonge to Note*

Loan Number:

Borrower(s):   MAXIMIM C COTE

Loan Date:   02/07/2004

Loan Amount:   $175,000.00

Property Address:   132 CAMPION AVENUE

TIVERTON, RI 02878

Pay to the order of

without recourse.

## HOUSEHOLD FINANCE CORPORATION II

Andrew T. Matsuda

Vice President

"This Endorsement and Allonge ("Allonge"), including the signer's signature, is being created by the signer electronically. It is the signer's intention (i) to adopt the signature on the Allonge as the signer's signature, and (ii) that the signature on the Allonge, when printed, serves as an original signature authenticating the Allonge for all purposes."

EXHIBIT D





Commonwealth of Massachusetts
Registry of Vital Records and Statistics
**CERTIFICATE OF DEATH**

73/333

| State File # | 2022 035588 |
| Registered # | 811 |

07012019

**MEDICAL EXAMINER**

OCME CASE # 2022-10291

| Place of Death | ST ANNE'S HOSPITAL, FALL RIVER, MA | | |
|---|---|---|---|
| Date of Death | JULY 19, 2022 | Age 61 YRS | Sex MALE |
| Current Name | COTE , MAXIMIN CYRIL | | |
| Surname at Birth or Adoption | COTE | | SSN ████-██-████ |
| AKA | --- | | |
| Date of Birth | SEPTEMBER 01, 1960 | Birthplace | FALL RIVER, MASSACHUSETTS |
| Residence | 132 CAMPION AVENUE, TIVERTON, RHODE ISLAND 02878 | | |
| Race WHITE | | Education 8TH GRADE OR LESS | |
| Marital Status DIVORCED | Occupation/Industry ARBORIST/LANDSCAPING | | |
| Last Spouse Last, First, Middle (Surname at Birth or Adoption) PEREIRA, CHERYL, ANN (TRIPP) | | Decedent: U.S. Veteran (Most Recent) NO | |
| Parent Name – Last, First Middle (Surname at Birth or Adoption) COTE, IRENE (MESSIER) | | Birthplace CANADA | |
| Parent Name Last, First Middle (Surname at Birth or Adoption) COTE, GERARD S (COTE) | | Birthplace RHODE ISLAND | |

| Part I. Cause of Death – Sequentially list immediate cause then antecedent causes then underlying cause a. Immediate Cause (Final condition resulting in death) | Interval between onset and death |
|---|---|
| ATHEROSCLEROTIC CARDIOVASCULAR DISEASE | --- YRS. |
| b. Due to or as a consequence of: --- | --- |
| c. Due to or as a consequence of: --- | --- |
| d. Due to or as a consequence of: --- | --- |

| Part II. Other significant conditions contributing to death but not resulting in underlying cause RIGHT CLAVICLE FRACTURE | Manner of Death: ACCIDENT |
|---|---|
| | Time of Death: 04:33 AM |
| | Result of Injury: YES |

| Certifier RADFORD PRESTON REYNOLDS, MD | Lic # 80184 |
|---|---|
| Addr: 140 FIELDWOOD AVENUE, SEEKONK, MASSACHUSETTS 02771 | |
| Funeral Licensee/ Designee CHARLES A. AUCLAIR | Lic # 5080 |
| Facility/Addr: AUCLAIR FUNERAL HOME, FALL RIVER, MASSACHUSETTS | |

| Immediate Disposition | CREMATION | |
|---|---|---|
| Date of Immediate Disposition | JULY 25, 2022 | |
| Place/Address FAMILY'S CHOICE CREMATION INC, 8 SCHOOLHOUSE ROAD, WARREN, RHODE ISLAND 02885 | | *Alison M. Bouchard* |
| Date of Record | JULY 25, 2022 | |
| Date of Amendment | --- | CLERK, CITY OF FALL RIVER |

DATE ISSUED:    OCTOBER 11, 2022



I, the undersigned, hereby certify that I am the Clerk of the City of Fall River; that as such I have custody of the records of birth, marriage, and death required by law to be kept in my office; and I do hereby certify that the above is a true copy from said records, as held in the Commonwealth's central vital records information repository.

*Alison M. Bouchard*

Clerk
City of Fall River

R-301 p. 2 of 2.                    COTE                                    SFN: 2022 035588

FALL RIVER 811

TIVERTON

STATE VOL/PG: 73/333 OPEN

| If U.S. war veteran, specify war/conflict(s) | | | |
|---|---|---|---|
| Branch of military (most recent) | | Rank/organization/outfit(most recent) | |
| Date entered(most recent) | Date Discharged (most recent) | Service Number(most recent) | |
| Place of Death Type **HOSPITAL - INPATIENT** | | Date of Pronouncement | Time of Pronouncement |
| RN/NP/PA Pronouncement? **NO** | Name of RN/NP/PA Pronouncing Death | | Lic # |
| RN/NP/PA Employing Agency or Institution | | Name of Physician or Medical Examiner notified | |
| Was M.E. Notified? **YES** | Provider in charge of patient's care, if not certifier | | |
| Autopsy Performed? **NO** | Findings available for Cause? | Tobacco contribute to death? **UNKNOWN** | Pregnancy Status, if female |
| Date of Injury **UNKNOWN** | Time of Injury **UNKNOWN** | Injury at Work? **NO** | If Transportation Injury, specify: |
| Place of Injury **UNKNOWN** | | Location/Address of Injury: **UNKNOWN** | |
| Describe How Injury Occurred **FALL** | | | |
| Expanded Race: **WHITE** | | | |
| Ethnicity: **FRENCH CANADIAN** | | | |
| Informant Name **TRISHA LEE COTE** Addr. **3228 N MAIN STREET, FALL RIVER, MASSACHUSETTS 02720** | | | Relationship **DAUGHTER** |
| Date Disposition Permit Issued: **JULY 25, 2022** | | Board of Health Agent | **ALISON M. BOUCHARD** |
| State Tracking No. **035588** | | Local Permit No. | **22-035588** |

EXHIBIT E

(Page 1 of 18)

Copy

Return To:                                    U    ,      Book 887 Page 279         000279

Ameriquest Mortgage Company
P.O. Box 11507,
Santa Ana, CA 92711

Prepared By:Ameriquest Mortgage Company

Kathleen Grenier
300 Centerville Rd., # 103
S.Warwick RI 02886                              000529

──── [Space Above This Line For Recording Data]────────────────

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is datedFebruary 7, 2004
together with all Riders to this document.
(B) "Borrower" isMaximin C Cote

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is Ameriquest Mortgage Company

Lender is a Corporation
organized and existing under the laws of Delaware

RHODE ISLAND - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3040  1/01

-6(RI) (0305)
XXXXXXXX              Initials        Page 1 of 15       02/07/2004 7:59:46

VMP MORTGAGE FORMS - (800)521-7291

(Page 2 of 16)

Copy

000280

Lender's address is 1100 Town and Country Road, Suite 200  Orange, CA 92868

Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated February 7, 2004
The Note states that Borrower owes Lender one hundred seventy-five thousand and
00/100                                                                      Dollars
(U.S. $175,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than March 1, 2034            .
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider   ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider           ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider                ☐ Biweekly Payment Rider         ☐ Other(s) [specify]

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

-6(RI) (0005)        Page 2 of 15     XXXXXXXX    Initials: A.C.C.
02/07/2004 7:59:46    Form 3040  1/01

Copy

000281

(P) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with Mortgage Covenants upon the Statutory Condition and with the Statutory Power of Sale, the following described property located in the County                    [Type of Recording Jurisdiction]
of  NEWPORT                                    [Name of Recording Jurisdiction]:
Legal Description Attached Hereto and Made a Part Hereof.

Parcel ID Number: Plat: 173 :pt: 28                          which currently has the address of
132 Campion Avenue                                                                    [Street]
Tiverton                              [City] , Rhode Island   02878              [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

Initials: _____

-6(RI) (0005)          Page 3 of 15          XXXXXXXX          02/07/2004 7:59:46 Form 3040  1/01

Copy

000282

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Initials: _M_CC_

Copy

000283

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

Copy

000284

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Copy

000285

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

(Page 8 of 18)

Copy

000286

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

Copy

000287

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

-B(RI) (0006)          Page 9 of 15          XXXXXXXXX          Initials: _____          02/07/2004  7:59:46          Form 3040   1/01

Copy

000288

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Copy

000289

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Copy

000290

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

000291

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. No Outstanding Automatic Orders in Domestic Relations Cases.** Borrower hereby represents and warrants to Lender that either (a) there is no outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against any Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation or (b) there is an outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against a Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation, and the other party that is subject to such order has consented to, or the court which issued the automatic order has issued another order authorizing, such Borrower's execution of the Note and this Security Instrument.

**25. Homestead Estate.** If Borrower heretofore has acquired or hereafter acquires an estate of homestead in the Property, Borrower hereby agrees that such homestead estate is waived to the extent of this Security Instrument and the amount due under the Note and to the extent of all renewals, extensions and modifications of this Security Instrument or the Note, and that said homestead estate is subject to all of the rights of Lender under this Security Instrument and the Note and all renewals, extensions and modifications of this Security Instrument and the Note, and is subordinate to the lien evidenced by this Security Instrument, and all renewals, extensions and modifications of this Security Instrument. Furthermore, Borrower hereby waives the benefits of any homestead or similar laws or regulations that may otherwise be applicable from time to time.

. Copy

000292

**26. Loan Fees.** Borrower has paid the following brokerage fees, loan fees, points, finder's fees, origination fees or similar charges in connection with the loans secured by this Security Instrument:

| | | |
|---|---|---|
| Origination - Discount Fees (points) | $ | 6,825.00 |
| Application Fees | $ | 360.00 |
| Processing Fees | $ | 626.00 |
| Administrative Fees | $ | 239.00 |
| Tax Service Fees | $ | 70.00 |
| Flood Search Fees | $ | 16.00 |
| Closing Preparation Fees | $ | .00 |
| Underwriting Fee | $ | .00 |
| | $ | |

As provided in Rhode Island General Law Section 34-23-6, none of these fees will be refunded in the event the loan is prepaid in whole or in part.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_Donald P. Gullett_                    _Maximin C Cote_ (Seal)
                                        Maximin C Cote        Borrower

_____

_____ (Seal)
                                                    Borrower

RECEIVED
TOWN OF TIVERTON
04 FEB 17 PM 12: 28

_____ (Seal)
                                                    Borrower

_____ (Seal)
                                                    Borrower

AND RECORDED ATTEST
HANNIBAL F. COSTA, TOWN CLERK

02/07/2004 7:59:46 AM

400-14RI (Rev 1/01)

(Page 15 of 18)

Copy

000293

STATE OF RHODE ISLAND, _Newport_ County ss:

On this _7th_ day of _February 2004_

In _Tiverton, R.I._, in said County, before me, personally appeared

_Maximin A. Cote_

each and all to me known and known to me to be the person(s) executing the foregoing instrument and acknowledged said execution to be his/her/their free act and deed.

DONALD P GUILLETTE
Notary Public
My Commission Expires 11/18/2006

_Donald P. Guillette_
Notary Public

400-15 RI (4/03)          Page 15 of 15



M·C·C·

02/07/2004 7:59:46 AM

Copy

Copy

000294

**BORROWER NAME:**

**LOAN NUMBER:**

## LEGAL DESCRIPTION

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF:

That certain lot or parcel of land, with all buildings and improvements thereon, situated in the Town of Tiverton, County of Newport, State of Rhode Island, on the easterly side of Campion Avenue, and bounded and described as follows:

WESTERLY on Campion Avenue Extension, ninety (90) feet;

NORTHERLY by Lot No. 26 on plan of land hereinafter mentioned, one hundred ten (110) feet, more or less;

EASTERLY by land now or formerly of Robert J. Lizotte, et ux, ninety (90) feet more or less, and

SOUTHERLY by Lot No. 30 on said plat, one hundred ten (110) feet, more or less;

Containing 9,900 square feet of land, more of less.

However otherwise bounded and described being LOT NO. 28 on that plat entitled "Plan of Land, Sectional, Location - Tiverton, R.I., Campion Ave. Extension, Owner, Lizotte, Robt. L. surveyed and drawn by W. Van Cala, 3-29-60", on file in Plat Book 10 at page 53 of the Tiverton Town Clerk's Office.

Property Address:

132 CAMPION AVENUE
TIVERTON, RHODE ISLAND 02878
AP 173, Lot 28

LGL3LTR (09/03)

(Page 18 of 18)

Copy

BOOK 887 PAGE 279

EXHIBIT F

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(239) 351-2442

Loan No ▮▮▮▮▮▮

_____ Space above for Recorder's use _____

### ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned  U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE OF CITIGROUP MORTGAGE LOAN TRUST 2019-C, whose address is 60 LIVINGSTON AVENUE, EP-MN-WS3D, ST. PAUL, MN 55107, (ASSIGNOR), does hereby grant, assign and transfer to U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE IGLOO SERIES V TRUST, whose address is 7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: 2/7/2004
Original Loan Amount: $175,000.00
Executed by (Borrower(s)): MAXIMIN C COTE
Original Lender: AMERIQUEST MORTGAGE COMPANY
Filed of Record: In Mortgage Book/Liber/Volume 887, Page 000279
Document/Instrument No: 000529 in the Recording District of Tiverton Township, RI, Recorded on 2/17/2004.

Property more commonly described as: 132 CAMPION AVENUE, TIVERTON, RHODE ISLAND 02878

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: DEC 3 0 2022

U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE OF CITIGROUP MORTGAGE LOAN TRUST 2019-C, BY FAY SERVICING, LLC, ITS ATTORNEY-IN-FACT

By: Jason Blackford
Title: Assistant Secretary

Witness Name: Daniel Alvarado

[REDACTED]

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of ____TEXAS____
County of ____DALLAS____

On ____DEC 3 0 2022____, before me, __Dekendrick Ganison__, a Notary Public, personally appeared ____Jason Blackford____, ____Assistant Secretary____ of/for FAY SERVICING, LLC, AS ATTORNEY-IN-FACT FOR U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE OF CITIGROUP MORTGAGE LOAN TRUST 2019-C, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of ____TX____ that the foregoing paragraph is true and correct. I further certify ____Jason Blackford____, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): __Dekendrick Ganison__
My commission expires: MAY 27 2025

DEKENDRICK GANISON
Notary Public, State of Texas
Comm. Expires 05-27-2026
Notary ID 128287218

[REDACTED]

RECEIVED FOR RECORD - TIVERTON RI
03/01/2023 03:39:35P
JOAN B. CHABOT, TIVERTON TOWN CLERK

HSBC Mortgage Services
577 Lamont Rd.
P.O. Box 1247
Elmhurst, IL 60126

Ameriquest Mortgage Company
P.O. Box 11507,
Santa Ana, CA 92711

Loan No

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is:
1100 Town & Country Road , Orange, CA 92865 Mortgage Electronic Registration Systems, Inc.
does hereby grant, sell, assign, transfer and convey, unto P.O. Box 2026, Flint, MI 48501-2026

a corporation organized and existing under the laws of _Delaware_
(herein "Assignee"), whose address is _Above_

a certain Mortgage dated  02/07/04  , made and executed by

Maximin C Cote

132 Campton Ave
Tiverton, RI. 02878

RECEIVED
TOWN OF TIVERTON
MAY 26 2005 09:40:10A
AND RECORDED ATTEST
NANCY L. MELLO, TOWN CLERK

to and in favor of Ameriquest Mortgage Company
and given to secure payment of one hundred seventy-five thousand and 00/100  ($175,000.00 ), which
Mortgage is of record in Book, Volume, or Liber No. _V_ at page  (or as No. _V_ ) of the COUNTY Records,
Town of Tiverton , State of Rhode Island, together with the note(s) and obligations therein described and the
money due and to become due thereon with interest; and all rights accrued or to accrue under such Mortgage.

recd. 2/17/2004          B 881 P. 279   Doc# 000.529

TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns, forever, subject only to the
terms and conditions of the above-described Mortgage.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on
02/17/2004

Ameriquest Mortgage Company
(Assignor)

MERS #: 1000480-000    842.3899-1
PH #: 1-888-679-6377

By:
Cunker Phabxixay - Agent

PREPARED BY:
NAOMI GARNER
577 LAMONT RD.
ELMHURST, IL 60126
630-617-7000

State of  California
County of  ORANGE

On  02/17/2004   before me,
personally appeared  Cunkeo Phabmixay

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or
the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

_____ (Seal)

Ameriquest Mortgage Company
Address: 1100 Town & Country Road  Orange, CA 92868

Tel No.: (714) 541-9960

LAURI WHITE
Commission # 1284933
Notary Public - California
Orange County
My Comm. Expires Nov 21, 2006

DOC: 00003849
Bk: 1429 Pg: 282

RECEIVED FOR RECORD
Tiverton.R.I.
NANCY L. MELLO TOWN CLERK
Dec 12,2012 02:38P



## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC, PO BOX 2026, FLINT, MI, 48501, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to NATIONSTAR MORTGAGE LLC A DELAWARE LIMITED LIABILITY CO, WHOSE ADDRESS IS 350 Highland Drive, Lewisville, TX 75067 (469)549-2000, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).

Said Mortgage is dated 02/07/2004, made by MAXIMIN C. COTE to AMERIQUEST MORTGAGE COMPANY, and recorded in the Land Evidence Records in the Town of TIVERTON, State of Rhode Island, in Volume 887, Page 279.

Property is commonly known as: 132 CAMPION AVENUE, TIVERTON, RI 02878.

IN WITNESS WHEREOF, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. has hereunto set its hand on 11/19/2012 (MM/DD/YYYY).

By: _Susan Lindhist_
Susan Lindhist
ASST. SECRETARY

Signed and delivered in the presence of:

_Angela Sanchez_
Angela Sanchez        Witness

STATE OF NEBRASKA
COUNTY OF SCOTTS BLUFF
The foregoing instrument was acknowledged before me on 11/19/2012 (MM/DD/YYYY) by _Susan Lindhist_ as ASST. SECRETARY of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.. He/she/they is (are) personally known to me.

_Linda D Parks_
Linda D. PARKS
Notary Public - State of NEBRASKA
Commission expires: 11-14-15

GENERAL NOTARY - State of Nebraska
LINDA D PARKS
My Comm. Exp. Nov. 14, 2015

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

When Recorded Return To:
Nationstar Mortgage LLC
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

NSMAV 18270907        MIN 100046000084238991 MERS PHONE 1-888-679-6377



DOC# 00000228
BK# 1525 PG# 247

RECEIVED FOR RECORD
Tiverton, R.I.
NANCY L. MELLO TOWN CLERK
Feb 02 2015 02:04P



## ASSIGNMENT OF MORTGAGE

CONTACT NATIONSTAR MORTGAGE, LLC FOR THIS INSTRUMENT 350 HIGHLAND DRIVE, LEWISVILLE, TX, 75067, TELEPHONE # 469-549-2000, WHICH IS RESPONSIBLE FOR RECEIVING PAYMENTS.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, NATIONSTAR MORTGAGE LLC, WHOSE ADDRESS IS 350 HIGHLAND DR., LEWISVILLE, TX, 75067, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to FEDERAL NATIONAL MORTGAGE ASSOCIATION WHOSE ADDRESS IS C/O 350 HIGHLAND DRIVE, LEWISVILLE, TX 75067, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Mortgage is dated 02/07/2004, made by MAXIMIM C. COTE to AMERIQUEST MORTGAGE COMPANY, and recorded in the Land Evidence Records in the Town of TIVERTON, State of Rhode Island, in Book 887, Page 279 and Doc # 000529.

Property is commonly known as: 132 CAMPION AVENUE, TIVERTON, RI 02878.

IN WITNESS WHEREOF, NATIONSTAR MORTGAGE LLC has hereunto set its hand on /23/2015 (MM/DD/YYYY).

By:

Nadine Homan
Vice President of Loan Documentation
All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

Signed and delivered in the presence of:

Alyssa Williams    Witness

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on /23 /2015 (MM/DD/YYYY), by Nadine Homan as Vice President of Loan Documentation of NATIONSTAR MORTGAGE LLC, who, as such Vice President of Loan Documentation being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

Alyssa Villalobos
Notary Public - State of FLORIDA
Commission expires: 10/02/2018

Alyssa Villalobos
Notary Public State of Florida
My Commission # FF 165490
Expires October 2, 2018

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

When Recorded Return To:
Nationstar Mortgage LLC
C/O Nationwide Title Clearing, Inc. 2100 Alt. 19 North
Palm Harbor, FL 34683




RECEIVED FOR RECORD
Tiverton,R.I.
NANCY L. MELLO TOWN CLERK
NOV 04 2019 12:29P

Investor Loan Num
Fannie Mae Loan #



00C1  00003283
Bk: 747 Pg: 318

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned FEDERAL NATIONAL MORTGAGE ASSOCIATION, WHOSE ADDRESS IS 8600 GRANITE PKWY., BUILDING VII-PLANO, TX 75024 (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF CHICROUP MORTGAGE LOAN TRUST 2019-C, WHOSE ADDRESS IS 300 DELAWARE AVENUE 9TH FLOOR, MAIL CODE: EX-DE-WDAW, WILMINGTON, DE 19801 (651)466-8946, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Mortgage is dated 02/07/2004, made by MAXIMIN C COTE to AMERIQUEST MORTGAGE COMPANY, and recorded in the Land Evidence Records in the Town of TIVERTON, State of Rhode Island, in Book 897, Page 279 and Doc # 000529.

Property is commonly known as 132 CAMPION AVE., TIVERTON, RI 02878.

IN WITNESS WHEREOF, FEDERAL NATIONAL MORTGAGE ASSOCIATION, by NATIONWIDE TITLE CLEARING, INC., its Attorney-In-Fact has hereunto set its hand on ...10/25 2019 (MM/DD/YYYY).

By: _____
Susan Hicks
VICE PRESIDENT
All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

Signed and delivered in the presence of:

_____
Samuel Hurtado    Witness

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on 10/25/2019 (MM/DD/YYYY), by Susan Hicks as VICE PRESIDENT of NATIONWIDE TITLE CLEARING, INC. as Attorney-In-Fact for FEDERAL NATIONAL MORTGAGE ASSOCIATION, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_____
Michelle Brown
Notary Public - STATE OF FLORIDA
Commission expires: 10/13/2020

MICHELLE BROWN
Notary Public - State of Florida
My Commission #GG 39514
Expires October 13, 2020

Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

When Recorded Return To,
Fannie Mae
C/O Nationwide Title Clearing, Inc. 2100 Alt. 19 North
Palm Harbor, FL 34683





*D0042375539*

EXHIBIT G

Department of Defense Manpower Data Center

Results as of : Jun-05-2023 11:53:53 AM

SCRA 5.16



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN:
Birth Date:      Nov-XX-█████
Last Name:     COTE
First Name:     TRISHA
Middle Name:  LEE
Status As Of:   Jun-05-2023
Certificate ID:  HXYMVZQL65L835K

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty. HOWEVER, WITHOUT A SOCIAL SECURITY NUMBER, THE DEPARTMENT OF DEFENSE MANPOWER DATA CENTER CANNOT AUTHORITATIVELY ASSERT THAT THIS IS THE SAME INDIVIDUAL THAT YOUR QUERY REFERS TO. NAME AND DATE OF BIRTH ALONE DO NOT UNIQUELY IDENTIFY AN INDIVIDUAL.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA 93955

Department of Defense Manpower Data Center

Results as of : Jun-05-2023 11:58:25 AM

SCRA 5.18



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN:
Birth Date:      Sep-XX-
Last Name:       FERREIR
First Name:      JENNIFER
Middle Name:     LYNN
Status As Of:    Jun-05-2023
Certificate ID:  KS7YV03CQ81Y049

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty. HOWEVER, WITHOUT A SOCIAL SECURITY NUMBER, THE DEPARTMENT OF DEFENSE MANPOWER DATA CENTER CANNOT AUTHORITATIVELY ASSERT THAT THIS IS THE SAME INDIVIDUAL THAT YOUR QUERY REFERS TO. NAME AND DATE OF BIRTH ALONE DO NOT UNIQUELY IDENTIFY AN INDIVIDUAL.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA  93955

Department of Defense Manpower Data Center

Results as of : Jun-05-2023 11:57:23 AM

SCRA 5.16



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN:

| | |
|---|---|
| Birth Date: | Jul-XX- |
| Last Name: | COTE |
| First Name: | JAMES |
| Middle Name: | GERARD |
| Status As Of: | Jun-05-2023 |
| Certificate ID: | Q6TSXNWQ990GY08 |

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty. HOWEVER, WITHOUT A SOCIAL SECURITY NUMBER, THE DEPARTMENT OF DEFENSE MANPOWER DATA CENTER CANNOT AUTHORITATIVELY ASSERT THAT THIS IS THE SAME INDIVIDUAL THAT YOUR QUERY REFERS TO. NAME AND DATE OF BIRTH ALONE DO NOT UNIQUELY IDENTIFY AN INDIVIDUAL.

Michael V. Sorrento

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA 93955

Department of Defense Manpower Data Center

Results as of : Jun-05-2023 11:54:41 AM

SCRA 5.16



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN:
Birth Date:        Apr-XX-█████
Last Name:      COTE
First Name:      ROXANNE
Middle Name:   RENEE
Status As Of:   Jun-05-2023
Certificate ID:   RF3VP7CSTXKL0F4

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty. HOWEVER, WITHOUT A SOCIAL SECURITY NUMBER, THE DEPARTMENT OF DEFENSE MANPOWER DATA CENTER CANNOT AUTHORITATIVELY ASSERT THAT THIS IS THE SAME INDIVIDUAL THAT YOUR QUERY REFERS TO. NAME AND DATE OF BIRTH ALONE DO NOT UNIQUELY IDENTIFY AN INDIVIDUAL.

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA 93955